No. 24-1061

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

JOSEPH R. CAPEN, ET AL.,
*Plaintiffs-Appellants*,

*v.*

ANDREA J. CAMPBELL, IN HER OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS, ET AL.,
*Defendants-Appellees.*

———————————

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
———————————

**BRIEF FOR AMICI CURIAE NEW JERSEY, CALIFORNIA, COLORADO,
CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAI'I,
ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW YORK,
OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

———————————

MATTHEW J. PLATKIN
 *Attorney General of New Jersey*
Jeremy M. Feigenbaum
 *Solicitor General*
Angela Cai
 *Deputy Solicitor General*
Christopher J. Ioannou
 *Deputy Attorney General*
25 Market St, PO Box 080
Trenton, NJ 08625
(862) 350-5800
jeremy.feigenbaum@njoag.gov

*(Additional counsel on signature page)*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................... ii

INTERESTS OF AMICI ........................................................ 1

SUMMARY OF THE ARGUMENT ......................................... 2

ARGUMENT ........................................................................ 4

    I.    To Promote the Safety and Well-Being of Their Residents, Jurisdictions Impose a Range of Restrictions, Including Prohibitions, on Dangerous Weapons and Accessories Not Commonly Used for Self-Defense. ....................................... 4

    II.    Massachusetts's Restrictions on LCMs and Assault Weapons Comport with the Second Amendment. ............................... 8

        A.    Neither LCMs Nor Assault Weapons Are Presumptively Protected by the Second Amendment. ........................ 9

        B.    Massachusetts's Law Is Relevantly Similar to Historical Restrictions on Firepower and on New, and Distinctly Dangerous, Forms of Weaponry. ............................... 19

CONCLUSION ..................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Antonyuk v. Chiumento*,
   89 F.4th 271 (2d Cir. 2023) ...................................................... 10, 12, 13

*Bevis v. City of Naperville*,
   85 F.4th 1175 (7th Cir. 2023) ...................................................... passim

*Brumback v. Ferguson*,
   No. 22-cv-3093, 2023 WL 6221425 (E.D. Wash. Sept. 25, 2023) ............... 10, 13

*Caesars Entm't Corp. v. Int'l Union of Operating Eng'rs Local 68 Pension Fund*,
   932 F.3d 91 (3d Cir. 2019) ................................................................... 10

*Cargill v. Garland*,
   57 F.4th 447 (5th Cir. 2023) ................................................................. 6

*Delaware State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
   No. 22-cv-951, —F. Supp. 3d—, 2023 WL 2655150 (D. Del. Mar. 27, 2023) ... 24

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ....................................................................... passim

*Friedman v. City of Highland Park*,
   784 F.3d 406 (7th Cir. 2015) ............................................................... 17

*Fyock v. Sunnyvale*,
   779 F.3d 991 (9th Cir. 2015) ............................................................... 11

*Guedes v. ATF*,
   920 F.3d 1 (D.C. Cir. 2019) .................................................................. 7

*Hanson v. District of Columbia*,
   No. 22-cv-2256, —F. Supp. 3d—, 2023 WL 3019777
   (D.D.C. Apr. 20, 2023) ................................................................. 18, 24

*Hartford v. Ferguson*,
  676 F. Supp. 3d 897 (W.D. Wash. 2023)........................................................ 18, 24

*Kolbe v. Hogan*,
  849 F.3d 114 (4th Cir. 2017) ........................................................ 14, 17

*Luis v. United States*,
  578 U.S. 5 (2016)........................................................11

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010)........................................................2

*Nat'l Ass'n for Gun Rights v. Lamont*,
  No. 22-cv-1118, —F.Supp.3d—, 2023 WL 4975979
  (D. Conn. Aug. 3, 2023) ........................................................ 16, 18, 24

*New York State Rifle & Pistol Assoc., Inc. v. Bruen*,
  597 U.S 1 (2022).......................................................... passim

*Ocean State Tactical, LLC v. Rhode Island*,
  95 F.4th 38 (1st Cir. 2024).......................................................... passim

*Or. Firearms Fed'n v. Kotek*,
  No. 22-1815, —F. Supp. 3d—, 2023 WL 4541027
  (D. Or. July 14, 2023) .......................................................... passim

*Rupp v. Bonta*,
  No. 17-cv-746, 2024 WL 1142061 (C.D. Cal. Mar. 15, 2024) ...................... 18, 24

*United States v. Cox*,
  906 F.3d 1170 (10th Cir. 2018) ........................................................13

*United States v. Morrison*,
  529 U.S. 598 (2000)........................................................1

*United States v. Salerno*,
  481 U.S. 739 (1987)........................................................1

*United States v. White*,
   401 U.S. 745 (1971) .......................................................................................16

*Worman v. Healey*,
   922 F.3d 26 (1st Cir. 2019 .........................................................................21

**Statutes**

National Firearms Act of 1934, ch. 757, Pub. L. No. 73-474, 48 Stat. 1236 ..........20

Public Safety and Recreational Firearms Use Protection Act,
   Pub. L. No. 103-322, §§ 110101-06, 108 Stat. 1996-2010 (1994)................ 3, 5, 6

H.R. Rep. No. 103-489 (1994) .....................................................................3

18 U.S.C. § 921 ....................................................................................5, 6

18 U.S.C. § 922 ................................................................................... 5, 20

Ch. 77, § 2, 1837 Ala. Laws 7 ...................................................................20

Ch. 77, § 1, 1839 Ala. Laws 67 .................................................................20

1832 Conn. Acts 391, ch. 25......................................................................23

No. 24 § 1, 1838 Fla. Laws 36 ...................................................................20

1837 Ga. Acts. 90, § 1.............................................................................20

1821 Maine Laws 98, ch. 25 .....................................................................23

1771-72 Mass. Province Laws 167, ch. 9 ...................................................23

1782 Mass. Acts 119, ch. 46 .....................................................................23

1882 Mass. Acts 212, ch. 269 ...................................................................23

Mass. Gen. Laws ch 140 § 131M ............................................................2, 8

Mass. Gen. Laws ch. 140 § 121 ........................................................ 2, 3, 8

1825 N.H. Laws 73, ch. 61 .....................................................................23

1772 N.Y. Laws 682, ch. 1549 ...............................................................23

Act of Apr. 13, 1784, ch. 28, 1784 N.Y. Laws 627 ................................23

1852 Tenn. Acts 246, ch. 169 ................................................................23

Ch. 137, §§ 1-2, 1837-38 Tenn. Acts 200...............................................20

Ch. 101, § 1, 1838 Va. Acts 76..............................................................20

## Court Rules

Fed. R. App. P. 29 .....................................................................................1

## Other Authorities

R. Spitzer, *Gun Law History in the United States and Second Amendment Right*,
80 LAW & CONTEMP. PROBS. 55 (2017)................................................22

S. Cornell & N. DeDino, *A Well Regulated Right: The Early American Origins
of Gun Control*, 73 FORDHAM L. REV. 487 (2004) ...............................22

## INTERESTS OF AMICI

The *Amici* jurisdictions—New Jersey, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington—have compelling governmental interests in public safety and crime prevention. In furtherance of those interests, and pursuant to Fed. R. App. P. 29(a)(2), *Amici* submit this brief to explain why Massachusetts's regulation of the sale and possession of large-capacity magazines (LCMs) and assault weapons within its borders is wholly consistent with the Second Amendment to the United States Constitution.

There are few interests more paramount to state governments than protecting public safety, and especially "the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987). *Amici* bear the solemn responsibility of ensuring the safety of the public and private spaces—the schools, grocery stores, houses of worship, and commercial centers—that make up the fabric of daily life in a free and democratic society. We work every day to promote our residents' health, welfare, and security, including by taking steps to curb the threats of mass shootings and other forms of gun violence that harm our residents and inhibit their exercise of constitutionally protected freedoms.

1

Exercising our police powers in service of these goals, *Amici* have adopted a range of measures that regulate weapons and weapon accessories, while ensuring that our residents have access to weapons for individual self-defense. Although our regulations differ in substance, *Amici* share the firm conviction that the Constitution allows States to address gun violence in a manner that is adapted to individual States' needs and consistent with our Nation's historical traditions. In accordance with these objectives, this Court should hold that Massachusetts's choice to restrict access to such "highly effective weapons of mass slaughter" comports with the Constitution. *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 46, 49 (1st Cir. 2024).

## SUMMARY OF THE ARGUMENT

The Second Amendment is "'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 597 U.S 1, 21 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Recognizing that "reasonable firearms regulations" can coexist comfortably with the Second Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality op.), jurisdictions have adopted a variety of restrictions on weapons and accessories that are not in common use for self-defense. This case concerns one such law: Massachusetts prohibits the sale and possession of LCMs, defined as ammunition magazines capable of holding more than 10 rounds, and assault weapons. *See* Mass. Gen. Laws

2

ch. 140 §§ 121, 131M. Like similar laws around the country that restrict certain weapons, accessories, and ammunition, Massachusetts's law preserves the right of law-abiding, responsible citizens to use firearms for self-defense. The Commonwealth's LCM restriction applies narrowly to magazines that "make it possible to fire a large number of rounds without re-loading, then to reload quickly when those rounds are spent," so that "a single person with a single [semiautomatic] weapon can easily fire literally hundreds of rounds within minutes." H.R. Rep. No. 103-489, at 19 (1994); *see also* Mass. Gen. Laws ch. 140 § 121 (tying definition of LCMs to that used by the federal Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, §§ 110101-06, 108 Stat. 1996-2010 (1994)). And its regulation of assault weapons applies only to weapons with enhanced "capability for lethality—more wounds, more serious, in more victims—far beyond that of other firearms in general, including other semiautomatic guns." H.R. Rep. No. 103-489, at 19-20; *see also* Mass. Gen. Laws ch. 140 § 121 (likewise tying definition of assault weapons to that used by the 1994 federal statute).

This Court should affirm the District Court's well-grounded conclusion that this Second Amendment challenge is unlikely to succeed on the merits. Appellant Addm. 1. Although the District Court assumed that assault weapons—which are not "in 'common use' today for self-defense"—fall within the Second Amendment's scope, the court correctly held that LCMs are not "Arms" under the Amendment's

3

original understanding and that Massachusetts's restrictions on assault weapons and LCMs are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17, 32. From the earliest days of our Nation through Reconstruction to the present, States and the federal government have imposed limits on firepower and have restricted novel forms of weaponry that pose unique dangers to public safety. These analogous traditions amply justify Massachusetts's measured restrictions on LCMs and assault weapons today. *See Ocean State Tactical*, 95 F.4th at 43-52.

## **ARGUMENT**

I. **To Promote the Safety and Well-Being of Their Residents, Jurisdictions Impose a Range of Restrictions, Including Prohibitions, on Dangerous Weapons and Accessories Not Commonly Used for Self-Defense.**

The Second Amendment "extends only to certain types of weapons." *Heller*, 554 U.S. at 623-25. States and the federal government retain latitude to regulate specific categories of weapons and accessories, including by restricting the public carry, possession, and sale of weapons that are not commonly used for self-defense and that pose a threat to our communities. Indeed, the Supreme Court has recognized the constitutionality of laws banning categories of bearable weapons—among them, "short-barreled shotguns," and "M-16 rifles and the like"—because certain "type[s] of weapon[s]" are simply "not eligible for Second Amendment protection." *Id.* at 621-23, 625, 627 (emphasis removed).

Consistent with that guidance, States and the federal government have adopted laws that impose restrictions, including prohibitions, on certain categories of particularly lethal weapons that are not suitable for or commonly used in self-defense. Like the federal government from 1994 to 2004,[1] ten States and the District of Columbia prohibit the purchase and possession of certain semiautomatic assault weapons.[2] Although state definitions of the prohibited class of weapons differ, they typically encompass weapons like AR-15 and AK-47-style rifles that inflict catastrophic injuries and have distinct combat capabilities, rendering them uniquely devastating in mass shootings.[3] Fourteen jurisdictions ban automatic-fire machine guns, subject to limited exceptions,[4] while 27 States and the federal government ban machine guns manufactured after May 19, 1986, require registration of machine guns owned before that date, or impose other restrictions.[5] Nine States and the District of Columbia also prohibit short-barreled shotguns or rifles,[6] while the

---

[1] Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, 108 Stat. 1996-2010, codified at 18 U.S.C. §§ 921(a), 922(v) (2000).

[2] *See* Appendix Table 1.

[3] *See id.*

[4] *See* Appendix Table 2.

[5] *See* Appendix Table 3.

[6] *See* Appendix Table 4.

federal government and 23 other States impose restrictions on those weapons.[7] Four jurisdictions prohibit high-caliber rifles,[8] five prohibit guns hidden in canes and other covert weapons,[9] and 19 ban grenades, rocket launchers, or other hand-held destructive devices.[10]

States and the federal government likewise regulate accessories that cannot by themselves be used for offensive or defensive purposes but nevertheless enhance the lethality of weapons. Fourteen States and the District of Columbia restrict the size of ammunition magazines that may be used with semiautomatic weapons, while allowing for possession and sale of smaller-capacity magazines.[11] While 11 of these jurisdictions set a capacity limit at 10 rounds, others, like Delaware, set a higher capacity limit.[12] Twenty-one jurisdictions and the federal government ban bump stocks, trigger cranks, binary triggers, rapid-fire trigger activators, or other devices

---

[7] *See* Appendix Table 5.

[8] *See* Appendix Table 6.

[9] *See* Appendix Table 7.

[10] *See* Appendix Table 8.

[11] *See* Appendix Table 9. From 1994 to 2004, the federal government also banned handgun and long-gun magazines capable of holding more than 10 rounds. *See* Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, 108 Stat. 1998-2000, codified at 18 U.S.C. §§ 921(a), 922(w) (2000).

[12] *See id.*

used to approximate an automatic rate of fire with a semiautomatic weapon.[13] Silencers or suppressors, used to muffle the sound of a gun when it fires, are banned in eight States and the District of Columbia[14] and subject to restrictions or registration requirements by the federal government and 20 more States.[15]

States and the federal government also restrict the type and size of ammunition that can be purchased or possessed. While all States allow for robust access to ammunition, at least 26 jurisdictions prohibit especially dangerous forms of ammunition. Twenty-one jurisdictions and the federal government prohibit the possession or sale of armor-piercing bullets, a type of ammunition designed to penetrate metal or armor.[16] Nine prohibit ammunition designed to explode, detonate, or segment upon impact.[17] Multiple jurisdictions prohibit certain large-caliber ammunition, usable with .50- or .60-caliber weapons[18]; hollow-point bullets,

---

[13] *See* Appendix Table 10. Courts have split on the lawfulness of the federal regulations construing the statutory term "machine gun" to include bump stocks. *See Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), *petition for cert. granted*, No. 22-976; *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019) (per curiam), *cert. denied*, 140 S. Ct. 789 (2020).

[14] *See* Appendix Table 11.

[15] *See* Appendix Table 12.

[16] *See* Appendix Table 13.

[17] *See* Appendix Table 14.

[18] *See* Appendix Table 15.

designed to expand in their target on impact[19]; and Flechette shells, expelled from guns as pieces of metal wire or dart-like projectiles.[20] Others ban certain forms of shotgun ammunition: "Dragon's breath" shells, which are used to simulate a flamethrower by making shotguns spew fireballs or columns of flames, and bolo shells, designed as two or more metal balls connected by a metal wire.[21]

All told, across our country today, States and the federal government impose a variety of restrictions, including prohibitions, on a diverse array of especially dangerous weapons, accessories, and ammunition. Massachusetts's law prohibiting assault weapons and restricting magazine capacity is of a piece with this tapestry of regulation and, as discussed below, a long history of governmental efforts to deter violence and promote public safety.

## II. Massachusetts's Restrictions on LCMs and Assault Weapons Comport with the Second Amendment.

Against the backdrop of state regulation of unusually dangerous weapons and accessories, and in light of mounting deaths and injuries from mass shootings, Massachusetts chose to restrict assault weapons and large-capacity magazines, while preserving broad access to firearms commonly used for self-defense and magazines

---

[19] *See* Appendix Table 16.

[20] *See* Appendix Table 17.

[21] *See* Appendix Table 18.

that hold up to 10 rounds of ammunition. *See* Mass. Gen. Laws ch. 140 §§ 121, 131M. That choice was constitutional. Under *Bruen*, courts evaluate a Second Amendment challenge by making two inquiries. *See Ocean State Tactical*, 95 F.4th at 43. First, courts must ask if the Second Amendment right is implicated—*i.e.*, whether its "plain text covers an individual's conduct." 597 U.S. at 17. If it does not, "the regulated activity is categorically unprotected," and no further inquiry is required. *Id.* at 18. Second, if the conduct is protected, courts ask if the restriction nevertheless accords with "the Nation's historical tradition of firearm regulation." *Id.* at 17. Under either step, Massachusetts's restrictions prove valid.

## A.    Neither LCMs Nor Assault Weapons Are Presumptively Protected by the Second Amendment.

In *Ocean State Tactical*, this Court "assume[d] that LCMs are 'arms' within the scope of the Second Amendment" because it upheld such LCM restrictions as "consistent with our history and tradition" in any event. 95 F.4th at 43. This Court is free to take the same approach here. But if it does address the first step of *Bruen*, the answer is clear: the scope of the Second Amendment does not extend to LCMs and assault weapons. First, LCMs do not qualify as "Arms" under the Second Amendment's plain text as originally understood. Second, neither LCMs nor assault weapons are commonly used or suitable for self-defense, as required for a weapon to receive Second Amendment protection. *See Bruen*, 597 U.S. at 32.

9

1. As accessories, LCMs are not bearable "Arms." To determine whether the Second Amendment covers the challenged item, courts conduct "a 'textual analysis' focused on the 'normal and ordinary' meaning of the Second Amendment's language" as originally understood. *Id.* at 20 (quoting *Heller*, 554 U.S. at 576-77); *see also Antonyuk v. Chiumento*, 89 F.4th 271, 300 (2d Cir. 2023). As the District Court explained, the question is thus whether, on the preliminary-injunction record, LCMs fall outside the original understanding of the term bearable "Arms." *See, e.g.*, Appellant Addm. 30. They do.

"Arms" under the Second Amendment are limited to "weapons of offence" that are "use[d] in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (citations omitted). Magazines—instruments that contain rounds of ammunition— "[o]n [their] own … cannot be [so] used to attack or defend." *Brumback v. Ferguson*, No. 22-cv-3093, 2023 WL 6221425, at *8 (E.D. Wash. Sept. 25, 2023). Indeed, Massachusetts presented linguistic expert analysis of historical dictionaries and databases containing historical texts to glean the "original public meaning" of the term "Arms." *Cf. Caesars Entm't Corp. v. Int'l Union of Operating Eng'rs Local 68 Pension Fund*, 932 F.3d 91, 95 & n.1 (3d Cir. 2019) ("Corpus linguistics describes language empirically … [and] measur[es], in a given speech community over a given time, the statistical frequency of a word and the linguistic contexts in which it appears."). That analysis showed that ammunition containers fell outside the scope

10

of the term "Arms," a term reserved for weapons like blades and firearms. App. 477 (Baron Decl. ¶¶ 9-10). Rather, such ammunition containers (then referred to as "cartridge boxes," now referred to as magazines) were historically understood to be within the separate category of "accoutrements." *Id.* Based on that evidence, the District Court rightly found that as ammunition containers, magazines are originally understood as accoutrements, not arms. Appellant Addm. 30-31.

Plaintiffs-appellants attempt to sidestep this evidence, instead arguing that magazines "are integral to the operation of all semi-automatic firearms." Appellants' Br. 32. To start, the question of functionality is unresponsive to the textual inquiry that *Bruen* requires. That some magazines may be essential to certain firearms gets at the "*corollary*, albeit not unfettered, right to possess the [instruments] necessary to render those firearms operable"—*not* whether the magazines themselves are Second Amendment arms. *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015) (emphasis added); *see also Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment). Moreover, plaintiffs-appellants' premise is wrong: it is undisputed that magazines with a capacity above 10 rounds are *not* necessary for firearm operability. Appellant Addm. 32 ("[W]hile magazines as a general class might be owed constitutional protection, LCMs as a specific subset of that class are never necessary for a firearm to function."); *accord Or. Firearms Fed'n v. Kotek*, No. 22-1815, —F. Supp. 3d—, 2023 WL 4541027, at *25-26 (D. Or. July 14, 2023),

11

*appeal pending*, No. 23-35479 (9th Cir.). As below, plaintiffs-appellants "do not contest [that] any semiautomatic weapon using a detachable magazine can accept one that holds ten rounds or fewer." Appellant Addm. 33.

Plaintiffs-appellants also wrongly conflate the textual inquiry by repeating *Bruen*'s observation that "modern instruments that facilitate armed self-defense" are constitutionally protected. 597 U.S. at 28; *see also* Appellant's Br. 33. Whether instruments facilitate armed self-defense does not answer the textual inquiry of whether they are "Arms" as originally understood; instead, that question goes to the *second* prerequisite for constitutional protection: that they are "'in common use' today for self-defense." *Bruen*, 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 627). As other appellate courts have recently explained, the Second Amendment right has "[n]ever been understood to 'protect those weapons not typically possessed by law-abiding citizens for lawful purposes.'" *Antonyuk*, 89 F.4th at 295 (quoting *Heller*, 554 U.S. at 625); *accord Bevis v. City of Naperville*, 85 F.4th 1175, 1193 (7th Cir. 2023) ("[T]he definition of 'bearable Arms' extends only to weapons in common use for a lawful purpose."). The common-use inquiry is distinct from the inquiry of whether an instrument would have originally fallen under the definition of "Arms." There is no dispute that machineguns, short-barreled rifles, and grenades were originally understood to be "weapons of offence" that could be "use[d] in wrath to cast at or strike another," but nonetheless do not enjoy constitutional protection

12

because they are not in common use for self-defense. *See Heller*, 554 U.S. at 625. Conversely, if an instrument was not originally understood as an "Arm," there is no need to examine whether it is in common use for self-defense. *See United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (excluding silencers without considering common use).

At bottom, the original public meaning of "Arms" excludes accessories like LCMs. This Court can and should join the many other courts to so hold. *See* Appellant Addm. 30-33; *Kotek*, 2023 WL 4541027, at *25-26; *Brumback*, 2023 WL 6221425, at *8-10; *see also Ocean State Tactical, LLC v. Rhode Island*, 646 F. Supp. 3d 368, 384-88 (D.R.I. 2022), *aff'd on other grounds*, 95 F.4th 38.

2. Although the District Court correctly held that LCMs are not "Arms," Appellant Addm. 15, 19, it failed to recognize or properly grapple with the second threshold problem in plaintiffs-appellants' argument: that weapons must be "'in common use' today for self-defense" to receive Second-Amendment protection. *Bruen*, 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 627). Weapons like M-16s that are "most useful in military service" or not in common use for lawful self-defense fall outside the Second Amendment's ambit. *Heller*, 554 U.S. at 627; *see also Antonyuk*, 89 F.4th at 295 (noting the Second Amendment has "[n]ever been understood to 'protect those weapons not typically possessed by law-abiding citizens

for lawful purposes'"); *Bevis*, 85 F.4th at 1192-93 (similar). That includes the items at issue here.

There is abundant, uncontested record evidence establishing that LCMs and assault weapons are not in common use for lawful self-defense. *See, e.g.*, App. 1558-1563 (Yurgealitis Decl. ¶¶ 82-95). Assault weapons are designed to inflict catastrophic injuries by firing high-velocity ammunition at long range, and they can easily penetrate walls to injure bystanders, making them poor civilian self-defense weapons. *E.g.*, App. 1558-1559 (Yurgealitis Decl. ¶¶ 83-85); App. 630, 646-47 (Donohue Decl. ¶¶ 103-104, 155, 158). In fact, one of the designers of the AR-15, the quintessential assault weapon, explained that it was "originally engineered to generate 'maximum wound effect.'" App. 631 (Donohue Decl. ¶ 108). The same holds true for LCMs, which "were not initially designed or intended for the civilian marketplace," but instead "can be traced directly to a military heritage." App. 1552 (Yurgealitis Decl. ¶ 58). As the Seventh Circuit rightly concluded, "assault weapons and high-capacity magazines are much more like machineguns and military-grade weaponry," *Bevis*, 85 F.4th at 1195-97, which *Heller* expressly confirmed "may be banned," *Heller*, 554 U.S. at 627; *see also Kolbe v. Hogan*, 849 F.3d 114, 136-37 (4th Cir. 2017) (en banc), *abrogated on other grounds by Bruen*, 597 U.S. 1.

Nor are those instruments typically used for self-defense. The Commonwealth's expert explained that assault weapons are used *at most* in 2% of

self-defense incidents, and more than ten shots are fired *at most* in 0.3% of all self-defense incidents. App. 417-18, 426-28 (Allen Decl. ¶¶ 9-10, 24-25). Indeed, as this Court recently determined, "civilian self-defense rarely—if ever—calls for the rapid and uninterrupted discharge of many shots, much less more than ten." *Ocean State Tactical*, 95 F.4th at 45 (citing sources). By contrast, these instruments *are* used disproportionately in mass shootings, especially ones resulting in particularly high numbers of fatalities. *See* App. 433-36 (Allen Decl. ¶¶ 31-36). Simply put, "[s]emiautomatic firearms fitted with LCMs are highly effective weapons of mass slaughter" which "can rapidly hit very many human targets"—a feature "that is "not … useful … for self-defense," but is instead "conducive to combat in war zones." *Ocean State Tactical*, 95 F.4th at 46, 49.

Plaintiffs-appellants' alternate methodology—looking only to surveys suggesting common ownership, *see* Appellants' Br. 4-8, 18-19—"contravenes case law in addition to logic," *Ocean State Tactical*, 95 F.4th at 50-51. First, the precedent is clear: the test for whether a specific weapon falls within the Second Amendment right turns on whether it is in common *use* for self-defense, not common *ownership*. *See Bruen*, 597 U.S. at 38 (referring to "commonly *used* firearms for self-defense"); *id.* at 70 (describing "right to bear commonly *used* arms in public"); *see also Heller*, 554 U.S. at 636 (striking down an "absolute prohibition of handguns held *and used* for self-defense" (emphases added)). Courts thus must consider whether the weapon

15

actually "facilitate[s] armed self-defense," which is "the central component of the Second Amendment right." *Bruen*, 597 U.S. at 28-29 (citation omitted). And while "a modern American citizen might want to possess a military-grade weapon" for self-defense, that belief alone is insufficient. *Nat'l Ass'n for Gun Rights v. Lamont* ("*NAGR*"), No. 22-cv-1118, —F.Supp.3d—, 2023 WL 4975979, at *26 (D. Conn. Aug. 3, 2023), *appeal pending*, No.23-1162 (2d Cir.); *accord Kotek*, 2023 WL 4541027, at *30 (holding purchasers' "subjective intent" cannot be dispositive); *see also Bevis*, 85 F.4th at 1195.[22] Indeed, *Bruen* and *Heller* themselves require analyzing the suitability and the actual use of the weapon for self-defense. *See Ocean State Tactical*, 95 F.4th at 51 (explaining that the Supreme Court "has not suggested that the constitutionality of arms regulations is to be determined based on the ownership rate of the weapons at issue, regardless of its usefulness for self-defense").

Second, a tally approach of ownership figures is hopelessly circular. The number of weapons in circulation depends in large part on when the government enacted legislation prohibiting it; had governments banned AR-15s the moment they

---

[22] Subjective expectations alone do not dictate the parameters of other constitutional rights. *See Kotek*, 2023 WL 4541027, at *30-32 (collecting cases). After all, "it is the task of the law to form and project" and not just "mirror and reflect" society's "expectations" as the law. *United States v. White*, 401 U.S. 745, 786 (1971) (Harlan, J., dissenting).

16

became commercially available, their circulation numbers would be negligible. *See id.* at 50-51. But "[i]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned." *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015); *see also Bevis*, 85 F.4th at 1198-99. Just as "[a] law's existence can't be the source of its own constitutional validity," that governments did not uniformly prohibit a certain firearm cannot be the reason why the firearm is presumptively protected by the Constitution. *Kolbe*, 849 F.3d at 141. After all, "[l]aw advances more slowly than the technology it regulates, but must nonetheless be able to respond when the ramifications of a technological development become more apparent over time." *Ocean State Tactical*, 95 F.4th at 50. And if a tally threshold were all that was needed to make a firearm protected by the Second Amendment, manufacturers could "flood[] … the market prior to any governmental prohibition in order to ensure it constitutional protection"—a wholly illogical proposition. *Kolbe*, 849 F.3d at 141; *see also Kotek*, 2023 WL 4541027, at *28. Indeed, if one "looked to numbers alone, the federal assault weapons ban would have been constitutional before 2004, but unconstitutional thereafter," when "these weapons began to occupy a more significant share of the market." *Bevis*, 85 F.4th at 1199. That result "lacks both textual and historical provenance," *id.*, not to mention common sense.

17

Plaintiffs-appellants never address this broken logic. Instead, their position would yield a conclusion that *Heller* found "startling": that the Second Amendment somehow protects machine guns. 554 U.S. at 624-25. After all, data suggest that civilians legally own hundreds of thousands of machine guns. *See* App. 1734. Under plaintiffs-appellants' ownership-tally approach, that would suffice for constitutional protection—an untenable position the Supreme Court has rejected. *See Heller*, 554 U.S. at 624; *Ocean State Tactical*, 95 F.4th at 48-49 (comparing machineguns to LCMs and assault weapons). This Court has already rejected that approach: "[d]espite [their] fixation on the ownership rates of LCMs [and assault weapons], such statistics are ancillary to the inquiry the Supreme Court has directed [courts] to undertake." *Ocean State Tactical*, 95 F.4th at 51.

LCMs and assault weapons are not actually in common use for self-defense, or suitable for that purpose. This Court can and should join other courts post-*Bruen* that have come to the same conclusion. *See, e.g.*, *Bevis*, 85 F.4th at 1192-97; *Kotek*, 2023 WL 4541027, at *25-34; *Hanson v. District of Columbia*, No. 22-cv-2256, — F. Supp. 3d—, 2023 WL 3019777, at *7-12 (D.D.C. Apr. 20, 2023) (same), *appeal pending*, No. 23-7061 (D.C. Cir.); *NAGR*, 2023 WL 4975979, at *19-26; *Rupp v. Bonta*, No. 17-cv-746, 2024 WL 1142061, at *9-19 (C.D. Cal. Mar. 15, 2024), *appeal pending*, No. 24-2583 (9th Cir.); *see also Hartford v. Ferguson*, 676 F. Supp. 3d 897, 903-904 (W.D. Wash. 2023).

18

**B.** **Massachusetts's Law Is Relevantly Similar to Historical Restrictions on Firepower and on New, and Distinctly Dangerous, Forms of Weaponry.**

Should this Court nevertheless assume that LCMs and assault weapons are protected "Arms" in common use for self-defense, at the next step of *Bruen*'s analysis, it should simply apply its own precedent and conclude that there exists a longstanding tradition of restrictions that are relevantly similar to Massachusetts's modern enactment. On this inquiry, *Ocean State Tactical* controls. 95 F.4th at 45-50. As this Court explained, restrictions on protected arms are constitutional if the government can demonstrate that they are "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 43 (quoting *Bruen*, 597 U.S. at 17). Laws like Massachusetts's that restrict unusually dangerous weapons have a long historical pedigree. From the earliest days of our republic through today, governments have limited firepower and restricted access to uniquely dangerous weapons that pose an inordinate public safety risk once those weapons emerged in the commercial market.

To determine whether a statute is consistent with a historical tradition of firearms regulation, courts must reason by analogy. *Id.* at 44-45 (citing *Bruen*, 597 U.S. at 27-30). Cases like this one—involving the "contemporary and growing societal concern" posed by using assault weapons and LCMs to "kill[] as many people as possible, as quickly as possible"—demand a "more nuanced approach" to analogical reasoning, and the government need not rely on finding a "dead ringer"

19

or "historical twin." *Id.* at 44 (quoting *Bruen*, 597 U.S. at 27, 30). Rather, this Court need only find analogues that are "relevantly similar," in that "*how* and *why*" they burden armed self-defense are comparable to Massachusetts's law. *Id.* at 44-45 (quoting *Bruen*, 597 U.S. at 29). Under this framework, Massachusetts's law restricting LCMs and assault weapons find ample relevantly similar historical analogues.

As this Court has already explained, "bans on sawed-off shotguns,"[23] "restrictions on machine guns,"[24] and "even the severe restrictions placed on Bowie knives by forty-nine states and the District of Columbia in the nineteenth century,"[25] have all burdened the self-defense right no more than the "negligible burden of having to use more than one magazine to fire more than ten shots." *Id.* at 46. After all, as in *Ocean State Tactical*, the record shows that "civilian self-defense rarely— if ever—calls for the rapid and uninterrupted discharge of many shuts, much less more than ten." *Id.* at 45. And the same holds true for assault weapons, which are rarely used for self-defense purposes, *see supra* at 14-15, but are disproportionately

---

[23] *See, e.g.*, National Firearms Act of 1934, ch. 757, Pub. L. No. 73-474, 48 Stat. 1236.
[24] *See, e.g.*, National Firearms Act of 1934; 18 U.S.C. § 922(*o*); *see also* App. 569-71 (Cornell Decl. ¶¶ 42-44).
[25] *See, e.g.*, 1837 Ga. Acts. 90, § 1; Ch. 77, § 2, 1837 Ala. Laws 7, 7; No. 24 § 1, 1838 Fla. Laws 36, 36; Ch. 137, §§ 1-2, 1837-38 Tenn. Acts 200; Ch. 101, § 1, 1838 Va. Acts 76, 76; Ch. 77, § 1, 1839 Ala. Laws 67, 67.

used to commit mass shootings relative to their ownership rates, *see* App. 735 (Klarevas Decl. ¶ 13) ("[T]he current difference is approximately ten-fold, with the rate at which assault weapons are now used to commit gun massacres far outpacing the rate at which modern sporting rifles circulate amongst civilians in the United States."). In short, Massachusetts's law "imposes very little—if any—burden on the right of armed self-defense as compared to the burdens imposed on that right by its historical predecessors." *Ocean State Tactical*, 95 F.4th at 46.

Massachusetts's law is also comparably justified to those predecessors. As the Commonwealth's legislature found, "the combination of modern semiautomatic firearms and LCMs have produced a growing and real threat to [its] citizens" as the "weapons of choice" of too-frequent mass shootings. *Id.* (quoting *Worman v. Healey*, 922 F.3d 26, 39 (1st Cir. 2019), *abrogated on other grounds by Bruen*, 597 U.S. 1). For good reason: "[s]emiautomatic firearms fitted with LCMs are highly effective weapons of mass slaughter" enabling a shooter to cause greater damage among more people in a shorter amount of time. *Id.* at 46-47; *see also Bevis*, 85 F.4th at 1195 ("[A]ssault weapons and high-capacity magazines are much more like machineguns and military-grade weaponry than they are like the many different types of firearms that are used for individual self-defense (or so the legislature was entitled to conclude)."). And the Commonwealth's concerns are of a piece with the historical tradition, which "recognizes the need to protect against the greater dangers

21

posed by some weapons (as compared to, for example, handguns) as a sufficient justification for firearm regulation." *Ocean State Tactical*, 95 F.4th at 49.

Those historically restricted weapons include sawed-off shotguns, "popular with the 'mass shooters of their day'"; Bowie knives, whose features "made it 'well-suited to cutting or stabbing' and other violent crime in the nineteenth century"; and machineguns like the M-16, which "are more dangerous, and no more useful for self-defense, than a normal handgun or rifle." *Id.* at 47-48 (citations omitted). Indeed, this Court observed that there "is no question that semiautomatic weapons fitted with LCMs much more closely resemble the proscribable 'M-16 rifles and the like' than they do traditional handguns," especially because "LCMs enable semiautomatic weapons to function even more like their proscribable automatic counterparts," both of which "can rapidly hit very many human targets." *Id.* at 48-49 (quoting *Heller*, 554 U.S. at 627). "[W]hile empirically this is not a useful feature for self-defense, it is presumably conducive to combat in war zones." *Id.* at 49. As with the historical restrictions on uniquely dangerous weapons, Massachusetts "responded to a growing societal concern about violent crime by severely restricting the weapons favored by its perpetrators, even though those same weapons could conceivably be used for self-defense." *Id.* at 48.

Finally, Founding-era gunpowder restrictions[26] provide "an especially apt analogy" to the LCM ban. *Id.* at 49. While "Founding-era society faced no risk that one person with a gun could, in minutes, murder several dozen individuals," those historical communities "did face risks posed by the aggregation of large quantities of gunpowder, which could kill many people at once if ignited." *Id.* To mitigate that risk, certain governments "limited the quantity of gunpowder that a person could possess, and/or limited the amount that could be stored in a single container." *Id.* Thus, it follows "that those same founding-era communities may well have responded to today's unprecedented concern about LCM use just as" Massachusetts

---

[26] *See* S. Cornell & N. DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487, 511 (2004) ("Limits on the amount of gunpowder a person could possess were common and typically in the range of twenty to thirty pounds."); R. Spitzer, *Gun Law History in the United States and Second Amendment Right*, 80 LAW & CONTEMP. PROBS. 55, 80-81 (2017) (summarizing gunpowder storage laws). A 1783 Massachusetts law imposed a fine on "any Person" who "shall take into any [house or building] within the Town of Boston, any … Fire-Arm, loaded with, or having Gun-Powder." 1782 Mass. Acts 119, ch. 46. In 1784, New York required separating gunpowder in the home "into four stone jugs or tin cannisters, which shall not contain more than seven pounds each." Act of Apr. 13, 1784, ch. 28, 1784 N.Y. Laws 627, 627. Throughout the 1780s, Pennsylvania laws "required that gunpowder be stored on the highest story of the home" in certain towns. *Heller*, 554 U.S. at 686 (Breyer, J., dissenting). Similar laws were adopted well into the nineteenth century, and *Amici* are not aware of court decisions invalidating them. *E.g.*, 1882 Mass. Acts 212, ch. 269 (requiring registration of gunpowder in excess of one pound stored in buildings); 1771-72 Mass. Province Laws 167, ch. 9 (requiring gunpowder imported into Massachusetts to be stored in public magazines); *see also* 1832 Conn. Acts 391, ch. 25; 1825 N.H. Laws 73, ch. 61; 1821 Maine Laws 98, ch. 25; 1772 N.Y. Laws 682, ch. 1549; 1852 Tenn. Acts 246, ch. 169.

did: "by limiting the number of bullets that could be held in a single magazine." *Id.*

At bottom, "the burden on self-defense imposed by" Massachusetts's law "is no greater than the burdens of longstanding, permissible arms regulations, and its justification compares favorably with the justification for prior bans on other arms found to pose growing threats to public safety." *Id.* at 49-50. LCMs and assault weapons accordingly fall "well within the realm of devices that have historically been prohibited once their danger became manifest." *Id.* at 50; *see also Bevis*, 85 F.4th at 1198-1202 (holding that laws restricting access to LCMs and assault weapons are part of "an unbroken tradition" of "regulating the especially dangerous weapons of the time"); *accord NAGR*, 2023 WL 4975979, at *27-33; *Kotek*, 2023 WL 4541027, at *39-46; *Hanson*, 2023 WL 3019777, at *12-17; *Rupp*, 2024 WL 1142061, at *19-36; *Hartford*, 2023 WL 3836230, at *3-6; *Delaware State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, No. 22-cv-951, — F. Supp. 3d.—, 2023 WL 2655150, at *5 (D. Del. Mar. 27, 2023), *appeal pending*, No. 23-1633 (3d Cir.). Massachusetts's choice to restrict access to those weapons and accessories is consistent with a long tradition of relevantly similar historical antecedents, and it comports fully with the Second Amendment.

## CONCLUSION

This Court should affirm the order of the District Court.

Respectfully submitted,

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

/s/ Jeremy M. Feigenbaum
Jeremy M. Feigenbaum
*Solicitor General*
Angela Cai
*Deputy Solicitor General*
Christopher J. Ioannou
*Deputy Attorney General*
(862) 350-5800
jeremy.feigenbaum@njoag.gov

Date: May 6, 2024

ROB BONTA
*Attorney General*
*State of California*
1300 I Street
Sacramento, CA 95814

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General for the*
*District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

25

KWAME RAOUL
*Attorney General*
*State of Illinois*
100 West Randolph Street
Chicago, IL 60601

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin Luther King Jr.
Blvd.
St. Paul, MN 55155

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

MICHELLE A. HENRY
*Attorney General*
*State of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

26

**<u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>**

Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

This Amicus Curiae brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(a)(5) because this brief contains 5,709 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This Amicus Curiae brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Jeremy M. Feigenbaum
Jeremy M. Feigenbaum
Solicitor General
New Jersey Attorney General's Office

Date: May 6, 2024

**<u>CERTIFICATE OF SERVICE</u>**

On May 6, 2024, the undersigned caused this brief to be filed with the Clerk of the United States Court of Appeals for the First Circuit via electronic filing. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>/s/</u> Jeremy M. Feigenbaum
Jeremy M. Feigenbaum
Solicitor General
New Jersey Attorney General's Office

Date: May 6, 2024

# APPENDIX[27]

## Table 1: Assault Weapon Restrictions

The following jurisdictions restrict the possession or sale of assault weapons as part of their firearm safety laws.

| Jurisdiction | Jurisdictional Law |
|---|---|
| **California** | Cal. Penal Code §§ 30500-30515, 30600, 30605. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202a-202c. |
| **Delaware** | Del. Code tit. 11, §§ 1465-1466(a). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(3A), 7-2502.01, 7-2502.02(a)(6). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-4, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1.9. |
| **Maryland** | Md. Code Ann., Crim. Law §§ 4-301, 4-303. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131M. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(w), -5(f) |
| **New York** | N.Y. Penal Law §§ 265.00(22), 265.02(7). |

---

[27] This Appendix is included pursuant to Fed. R. App. P. 28(f).

29

| | |
|---|---|
| **Washington** | Wash. Rev. Code §§ 9.41.0001, 9.41.010(2), 9.41.240 (2023 Wash. Sess. Laws, ch. 162, § 1). |

## Table 2: Laws Banning Automatic Weapons

The following jurisdictions ban automatic weapons as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 32625. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(5), (b)(1). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(10), 7-2502.01, 7-2502.02(a)(2). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(i). |
| **Iowa** | Iowa Code §§ 724.1(a), 724.3. |
| **Louisiana** | La. Rev. Stat. Ann. §§ 40:1751 to 40:1752. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c). |

| Minnesota | Minn. Stat. § 609.67. |
|---|---|
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(*i*), -5(a) |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Rhode Island** | R.I. Gen. Laws § 11-47-8(a). |
| **Wisconsin** | Wis. Stat. § 941.26(1g)(a). |

### Table 3: Laws Requiring Registration of Pre-1986 Automatic Weapons

The following jurisdictions require that all automatic weapons manufactured before 1986 be registered with a licensing agency as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. § 5845(b). |
| **Alaska** | Alaska Stat. Ann. §§ 11.61.200(a)(3), (h)(1)(C). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iii), 13-3102(A)(3). |
| **Connecticut** | Conn. Gen. Stat. § 53-202. |
| **Florida** | Fla. Stat. §§ 790.001(9), 790.221. |

| | |
|---|---|
| **Georgia** | Ga. Stat. §§ 16-11-121(2), 16-11-122, 16-11-124(4). |
| **Indiana** | Ind. Code Ann. §§ 35-47-5-8 to 35-47-5-8-10. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(5). |
| **Maine** | Me. Rev. Stat. Ann. tit. 17-A, §§ 1051-1052. |
| **Maryland** | Md. Code Ann. §§ 4-401 to 4-405. |
| **Michigan** | Mich. Comp. Laws §§ 750.224(1)(a), (3)(c). |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(a). |
| **Montana** | Mont. Code Ann. §§ 45-8-302 to 45-8-304. |
| **Nebraska** | Neb. Rev. Stat. § 28-1203. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.350(1)(b). |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-05-01. |
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17. |

| | |
|---|---|
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. § 908. |
| **South Carolina** | S.C. Code Ann. §§ 16-23-230 to 16-23-250. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (23), 22-14-6. |
| **Tennessee** | Tenn. Code Ann. §§ 39-17-1302(a)(3), (d). |
| **Texas** | Tex. Penal Code §§ 46.01(9), 46.05(a)(1)(B). |
| **Virginia** | Va. Code §§ 18.2-288 to 18.2-298. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(29), 9.41.190. |
| **West Virginia** | W. Va. Code § 61-7-9. |

### Table 4: Laws Banning Short-Barreled Shotguns or Rifles

The following jurisdictions ban possession of short-barreled shotguns or short-barreled rifles as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 33210, 33215. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |

| | |
|---|---|
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(4), (b)(1). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(15), (17), 7-2502.01, 7-2502.02(a)(1), (a)(3). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(ii). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, § 121; Mass. Gen. Laws ch. 269, § 10(c). |
| **Minnesota** | Minn. Stat. § 609.67. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(o), 2C:39-3(b). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47-2(15) to 11-47-2(16), 11-47-8(b). |

### Table 5: Laws Restricting Short-Barreled Shotguns or Rifles

The following jurisdictions restrict the possession of short-barreled shotguns or short-barreled rifles as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(6), 921(a)(8), 922(a)(4). |
| **Alaska** | Alaska Stat. Ann. §§ 11.61.200(a)(3), (h)(1)(D). |

| | |
|---|---|
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iv), 13-3102(A)(3). |
| **Connecticut** | Conn. Gen. Stat. § 53a-211. |
| **Florida** | Fla. Stat. §§ 790.001(10)-(11), 790.221. |
| **Georgia** | Ga. Stat. §§ 16-11-121(4)-(5), 16-11-122, 16-11-124(4). |
| **Iowa** | Iowa Code § 724.1C. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(5). |
| **Michigan** | Mich. Comp. Laws § 750.224b. |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(b). |
| **Montana** | Mont. Code Ann. § 45-8-340. |
| **Nebraska** | Neb. Rev. Stat. § 28-1203. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.275. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-02-03. |

| | |
|---|---|
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17. |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. § 908. |
| **South Carolina** | S.C. Code Ann. §§ 16-23-230 to 16-23-250. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (46), 22-14-6. |
| **Texas** | Tex. Penal Code §§ 46.01(10), 46.05(a)(1)(C). |
| **Washington** | Wash. Rev. Code §§ 9.41.010(41)-(42), 9.41.190. |
| **Wisconsin** | Wis. Stat. § 941-28. |

## Table 6: Laws Banning 50-Caliber and Other High-Caliber Rifles

The following jurisdictions ban possession of rifles designed to shoot 50-Caliber and other High-Caliber ammunition.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 30530, 30600, 30610. |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(8A), 7-2502.01, 7-2502.02(a)(7). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(15)-(16), 5/24-1.9. |

| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(c)(3), (5), 2C:39-3(a). |
|---|---|

**Table 7: Laws Banning Covert Weapons**

The following jurisdictions ban possession of covert and hidden firearms as part of their firearm safety laws.

| Jurisdiction | Jurisdictional Law |
|---|---|
| **Alabama** | Ala. Code § 13A-11-54. |
| **California** | Cal. Penal Code § 24410. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, § 131N. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(hh), 2C:39-3(m). |
| **New York** | N.Y. Penal Law § 265.02(6). |

**Table 8: Laws Banning Destructive Devices**

The following jurisdictions ban the possession of grenades, rocket launchers, bombs, and other destructive devices as part of their firearm safety laws.

| Jurisdiction | Jurisdictional Law |
|---|---|
| **California** | Cal. Penal Code §§ 16460, 18710. |
| **Colorado** | Colo. Rev. Stat. § 18-12-109(2)(a). |
| **Connecticut** | Conn. Gen. Stat. § 53-80(a). |
| **Delaware** | Del. Code Ann. tit. 11, §§ 1444(a)(1), (b)(1). |

| | |
|---|---|
| **District of Columbia** | D.C. Code § 22-4515a. |
| **Florida** | Fla. Stat. §§ 790.001(4), 790.161. |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(iii). |
| **Iowa** | Iowa Code §§ 101A.1(2A), 724.1(1)(c), 724.3. |
| **Massachusetts** | Mass. Gen. Laws ch. 266, § 102(c). |
| **Minnesota** | Minn. Stat. § 609.668. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(c)(1), 2C:39-3(a). |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Oregon** | Or. Rev. Stat. § 480.070. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. §§ 908(a), (c). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47.1-21. |
| **Utah** | Utah Code Ann. § 76-10-306(3). |
| **Virginia** | Va. Code Ann. § 18.2-85. |

| | |
|---|---|
| **Wisconsin** | Wis. Stat. § 941.26(2)(c). |

### Table 9: Laws Restricting Magazine Capacity

The following jurisdictions restrict the quantity of rounds able to be fired from a single magazine as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 16740, 32310. |
| **Colorado** | Colo. Rev. Stat. §§ 18-12-301, 302, 303. |
| **Connecticut** | Conn. Gen. Stat. § 53-202w(a)(1). |
| **Delaware** | Del. Code Ann. tit. 11, §§ 1468, 1469(a). |
| **District of Columbia** | D.C. Code § 7-2506.01(b). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1.10. |
| **Maryland** | Md. Code Ann., Crim. Law § 4-305(b). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131M. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(y), 2C:39-3(j). |

| | |
|---|---|
| **New York** | N.Y. Penal Law § 265.02(8). |
| **Oregon** | 2022 Oregon Ballot Measure 114, § 11. |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47.1-2, 11-47.1-3. |
| **Vermont** | Vt. Stat. Ann. Tit. 13, § 4021. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(22), 9.41.370. |

**Table 10: Laws Banning Bump Stocks**

The following jurisdictions ban the possession of bump stocks, trigger cranks, trigger activators, and other devices designed to artificially increase the rate of fire for semi-automatic weapons as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(24), 922(o);<br>26 U.S.C. § 5845(b);<br>27 C.F.R. 447.11, 478.11, 479.11. |
| **California** | Cal. Penal Code § 32900. |
| **Connecticut** | Conn. Gen. Stat. § 53-206g. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(6), (b)(2). |
| **District of Columbia** | D.C. Code Ann. § 22-4514(a). |
| **Florida** | Fla. Stat. § 790.222. |

| | |
|---|---|
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8.5. |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(14). |
| **Iowa** | Iowa Code § 724.29. |
| **Maryland** | Md. Code Ann., Crim. Law §§ 4-301, 4-305.1(a). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c). |
| **Michigan** | Mich. Comp. Laws § 750.224e. |
| **Minnesota** | Minn. Stat. § 609.67. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.274. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(ee)-(ff), 2C:39-3(*l*). |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Oregon** | Or. Rev. Stat. § 480.070. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. §§ 908(a), (c). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47-2(3), (19), 11-47-8(d), 11-47-8.1. |

| Vermont | Vt. Stat. Ann. tit. 13, § 4022. |
| Virginia | Va. Code Ann. § 18.2-308.5:1. |
| Washington | Wash. Rev. Code §§ 9.41.010(5), 9.41.220. |

### Table 11: Laws Banning Silencers

The following jurisdictions ban the possession of silencers, suppressors, and other accessories designed to mitigate the sound of discharging a weapon as part of their firearm safety laws.

| Jurisdiction | Jurisdictional Law |
|---|---|
| California | Cal. Penal Code § 33410. |
| Delaware | Del. Code tit. 11, §§ 1444(a)(3), (b)(1). |
| District of Columbia | D.C. Code Ann. § 22-4514(a). |
| Hawaii | Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a). |
| Illinois | 720 Ill. Comp. Stat. 5/24-1(a)(6). |
| Massachusetts | Mass. Gen. Laws ch. 269, § 10A. |
| New Jersey | N.J. Stat. Ann. §§ 2C:39-1(g), 2C:39-3(c). |

| | |
|---|---|
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Rhode Island** | R.I. Gen. Laws § 11-47-20. |

### Table 12: Laws Restricting Silencers

The following jurisdictions restrict the possession of silencers, suppressors, and other accessories designed to mitigate the sound of discharging a weapon as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. § 921(a)(3); 26 U.S.C. §§ 5841(a), 5845(a)(7), 5861. |
| **Alaska** | Alaska Stat. §§ 11.61.200(a)(3), (c), (h)(1)(B). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(ii), 13-3102(A)(3), 17-251. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Connecticut** | Conn. Gen. Stat. § 53a-211. |
| **Georgia** | Ga. Code Ann. §§ 16-11-121(7), 16-11-122. |
| **Iowa** | Iowa Code § 724.1B. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(4). |
| **Michigan** | Mich. Comp. Laws §§ 750.224(1)(b), (3)(c). |

44

| | |
|---|---|
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(c). |
| **Montana** | Mont. Code Ann. § 45-8-337. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.350(1)(b). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-05-01. |
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(5), 2923.17(A), (C)(5). |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. § 908. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (17), 22-14-6. |
| **Vermont** | Vt. Stat. Ann. tit. 13, § 4010. |
| **Washington** | Wash. Rev. Code § 9.41.250(1)(c). |
| **Wisconsin** | Wis. Stat. § 941-298. |

## <u>Table 13: Laws Banning Armor-Piercing Ammunition</u>

The following jurisdictions ban the possession of ammunition designed to penetrate body armor or vehicle armor as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(17)(B)-(C), 922(a)(7)-(8). |
| **Alabama** | Ala. Code § 13A-11-60(a). |
| **California** | Cal. Penal Code §§ 16660, 30315, 30320. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202*l*(a)(1), (b)-(c). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(13A)(A)(i), 7-2506.01(a)(3). |
| **Florida** | Fla. Stat. §§ 790.31(1)(a), (2)(a)-(c). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |
| **Indiana** | Ind. Code Ann. § 35-47-5-11.5. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(6). |
| **Kentucky** | Ky. Rev. Stat. Ann. §§ 237.060(7), 237.080. |

| | |
|---|---|
| **Louisiana** | La. Rev. Stat. Ann. §§ 40:1810-40:1812. |
| **Maine** | Me. Rev. Stat. Ann. tit. 17-A, § 1056. |
| **Michigan** | Mich. Comp. Laws § 750.224c. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.273. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(gg), 2C:39-3(f). |
| **North Carolina** | N.C. Gen. Stat. § 14-34.3. |
| **Oklahoma** | Okla. Stat. tit. 21, §§ 1289.19-1289.22. |
| **Rhode Island** | R.I. Gen. Laws § 11-47-20.1. |
| **South Carolina** | S.C. Code Ann. § 16-23-520. |
| **Texas** | Tex. Penal Code §§ 46.01(12), 46.05(a)(2). |
| **Virgin Islands** | V.I. Stat. tit. 14, §§ 2256(b)-(c). |

**Table 14: Laws Banning Explosive Ammunition**

The following jurisdictions ban the possession of high-explosive incendiary ammunition designed to explode or impart energy upon contact via a charge as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 30210. |
| **Florida** | Fla. Stat. §§ 790.31(1)(b), (2)(a)-(c). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-3.1(a)(6). |
| **Iowa** | Iowa Code §§ 724.1(1)(f), 724.3. |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.4). |
| **New York** | N.Y. Penal Law § 265.01(7). |
| **Tennessee** | Tenn. Code Ann. § 39-17-1304(b). |
| **Virgin Islands** | V.I. Stat. tit. 14, §§ 2256(b)-(c). |

### Table 15: Laws Banning Large-Caliber Ammunition

The following jurisdictions ban the possession of large-caliber ammunition as part of their firearm safety laws.

| Jurisdiction | Jurisdictional Law |
|---|---|
| **California** | Cal. Penal Code § 18735. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202*l*(a)(2), (b)-(c). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(13A)(A)(iii), 7-2506.01(a)(3). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-1.9(a)(6), (b), (c) (possession ban effective Jan. 1, 2024). |

### Table 16: Law Banning Hollow-Point Bullets

The following state bans the possession of hollow-point and other ammunition designed to expand on impact as part of its firearm safety laws.

| State | State Law |
|---|---|
| **New Jersey** | N.J. Stat. Ann. § 2C:39-3(f). |

**Table 17: Laws Banning Flechette Ammunition**

The following states ban the possession of flechette shells, or other ammunition that can be fired in a firearm and that expels two or more pieces of fin-stabilized solid metal wire or two or more solid dart-type projectiles, as part of their firearm safety laws.

| State | State Law |
|---|---|
| **California** | Cal. Penal Code §§ 16570, 30210. |
| **Florida** | Fla. Stat. §§ 790.31(1)(f), (2)(a)-(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |

**Table 18: Laws Banning Dragon's Breath and Bolo Shells**

The following states ban the possession of "Dragon's Breath" shells, ammunition that when fired produces sparks and flames simulating a flamethrower, and bolo shells, ammunition containing two or more large lead balls connected by a wire, that when used may sever a target's limb, as part of their firearm safety laws.

| State | State Law |
|---|---|
| **Florida** | Fla. Stat. §§ 790.31(1)(d)-(e), (2)(a)-(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |
| **Iowa** | Iowa Code §§ 724.1(1)(f), 724.2, 724.3. |