# No. 24-1061

# In the United States Court of Appeals for the First Circuit

_____

**JOSEPH R. CAPEN; NATIONAL ASSOCIATION FOR GUN RIGHTS,**
*Plaintiffs-Appellants*,
v.
**ANDREA JOY CAMPBELL, in her official capacity as Attorney General of the Commonwealth of Massachusetts,**
*Defendant-Appellee*,
**CHARLES D. BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts,**
*Defendant.*

On Appeal from the United States District Court
for the District of Massachusetts, Boston
No. 1:22-cv-11431-FDS

_____

**REPLY BRIEF OF APPELLANTS, JOSEPH R. CAPEN; NATIONAL ASSOCIATION FOR GUN RIGHTS**

_____

BARRY K. ARRINGTON
ARRINGTON LAW FIRM
4195 Wadsworth Boulevard
Wheat Ridge, CO 80033
(303) 205-7870
barry@arringtonpc.com

*Counsel for Appellants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................... iii

I. The Interest-Balancing Analysis Advanced by the Common-wealth is Prohibited by *Bruen* ......................................................... 1

II. The Commonwealth May Not Ban Weapons in Common Use ........ 3

III. The Commonwealth Does Not Even Attempt to Defend its Un-constitutional Handgun Ban ............................................................ 4

IV. "Common Use" is a Statistical Inquiry ........................................... 5

V. This is Not a "Nuanced" Case ........................................................ 6

VI. There is No Historical Tradition of Categorically Banning Fire-arms in Common Use ....................................................................... 6

VII. Gunpowder Storage Laws Were Fire Safety Regulations ............... 7

VIII. The Knife, Club and Trap Gun Regulations were Not Analogous to the Commonwealth's Categorical Ban of Weapons in Common Use ..................................................................................................... 7

IX. Twentieth-Century Laws Are Not Relevant .................................... 7

X. "Common Use" Does Not Mean "Frequently Fired" ....................... 8

XI. The Commonwealth Does Not Dispute that the Banned Weap-ons are Rarely Used in Crime ........................................................... 9

XII. There Were No Founding-Era Bans on Possession in the Home for Purposes of Self-Defense ........................................................... 10

XIII. *Heller* Rejected Arguments Based on Differences in the Degree and Kind of Urban Firearms Violence .......................................... 11

XIV. *Heller* Cannot be Cabined to its Facts ............................................ 13

XV. The Banned Weapons are "Arms" .................................................. 13

XVI. The Commonwealth May Not Justify its Ban by Pointing to Weapons it Has Not Banned .......................................................... 15

XVII. The Other Factors Weigh in Favor of Injunctive Relief ................ 15

CONCLUSION ........................................................................................ 16

CERTIFICATE OF COMPLIANCE ........................................................ 17

CERTIFICATE OF SERVICE .................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Bevis v. City of Naperville, Illinois,*
  85 F.4th 1175 (7th Cir. 2023) ............................................................ 14

*Caetano v. Massachusetts,*
  577 U.S. 411 (2016) ................................................................................ 4

*D.C. v. Heller,*
  554 U.S. 570 (2008) .................................. 4, 5, 7, 8, 9, 10, 11, 12, 13, 15

*Duncan v. Bonta,*
  2023 WL 6180472 (S.D. Cal. Sept. 22, 2023) ....................................... 5

*Duncan v. Bonta,*
  83 F.4th 803 (9th Cir. 2023) ................................................................. 8

*Heller v. D.C.,*
  670 F.3d 1244 (D.C. Cir. 2011) ..................................................... 10, 13

*McKnight v. Gen. Motors Corp.,*
  511 U.S. 659 (1994) (per curiam) ......................................................... 3

*NAGR v. Polis,*
  District of Colorado, 24-cv-001 ........................................................... 11

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
  597 U.S. 1 (2022) ............................................. 1, 2, 3, 10, 11, 12, 14, 15

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo,*
  804 F.3d 242 (2d Cir. 2015) ...................................................... 6, 9, 10

*Ocean State Tactical, LLC v. Rhode Island,*
  95 F.4th 38 (1st Cir. 2024) ................................................ 3, 4, 5, 6, 7, 8

## I. The Interest-Balancing Analysis Advanced by the Commonwealth is Prohibited by *Bruen*

The Commonwealth veers into error in the first sentence of its brief when it writes: "This case concerns the authority of a State to prohibit civilians from possessing combat-style weapons and accessories that pose an inordinate risk to the safety of the public and the law enforcement officers charged with protecting the public." Ans. Br. 1. The Commonwealth has weighed its citizens' Second Amendment right to possess the banned weapons against its policy interests and has determined that its policy interests predominate. The problem with this argument is that it is directly contrary to the clear holding of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022), where the Court held that when a plaintiff's conduct is covered by the plain text of the Second Amendment, "[t]o justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."

In the teeth of the Supreme Court's plain holding, the Commonwealth insists on attempting to justify its arms ban on policy grounds. Obviously, the Commonwealth does not come out and say that it is

ignoring *Bruen* and advancing policy arguments. Instead, the Commonwealth turns the history and tradition inquiry mandated by *Bruen* into a thinly disguised interest-balancing analysis. Indeed, it comes right up to the edge of announcing that is what it is doing when it writes: "From the Founding era through the 20th century, states have understood their police powers to permit restricting specific types of weapons and accessories that posed a threat to public safety." Ans. Br. 21. In other words, the Commonwealth argues that under the Nation's historical tradition of firearms regulation, states have always been free to exercise their police power to promote the important governmental interest of public safety.

Instead of following *Bruen's* mandate to eschew interest balancing, the Commonwealth has simply moved its interest-balancing analysis into the historical analysis. We know this because after announcing this "historical tradition," the Commonwealth engages in a lengthy discussion explaining how its arms ban promotes the important interest of public safety. Ans. Br. 31-38. *Bruen* anticipated this very tactic and warned courts not to fall for it. The Court wrote: "This does not mean that courts may engage in independent means-end scrutiny *under the guise of an analogical inquiry*. Again, the Second Amendment is the product of an

interest balancing by the people, not the evolving product of federal judges." 597 U.S. at 29, n. 7 (internal citation and quotation marks omitted; emphasis added).

The district court's decision was also based largely on its evaluation of the policy arguments advanced by the Commonwealth, and in their Opening Brief Plaintiffs argued that such policy arguments are not relevant to the resolution of this matter. Op. Br. 20-30. Plaintiffs incorporate those arguments. Plaintiffs recognize that many of the arguments that it will advance in this brief are foreclosed by this Court's recent holding in *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38 (1st Cir. 2024). They raise them here to preserve them for appeal. *See McKnight v. Gen. Motors Corp.*, 511 U.S. 659, 659–60 (1994) (per curiam).

## II. The Commonwealth May Not Ban Weapons in Common Use

The Commonwealth's next error occurs in the second paragraph of its brief where it writes: "Plaintiffs contend the Second Amendment prevents legislatures from banning *any* bearable weapon that is 'in common use'—no matter how deadly, destructive, or unsuited to self-defense that weapon may be." Ans. Br. 1 (emphasis in original). The Commonwealth seems to be astonished by the proposition that it cannot ban a weapon in

common use if, in its judgment, the weapon is "unsuitable" for its citizens to use. It needn't be astonished, because that is precisely what the Supreme Court held in *D.C. v. Heller*, 554 U.S. 570 (2008). As Justice Alito put it in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), "the relative dangerousness of a weapon is *irrelevant* when the weapon belongs to a class of arms commonly used for lawful purposes." *Id.* at 418 (Alito, J., concurring) (citing *Heller*, 554 U.S. at 627) (emphasis added).[1]

## III. The Commonwealth Does Not Even Attempt to Defend its Unconstitutional Handgun Ban

The Commonwealth admits that the challenged statute bans certain handguns. Ans. Br. 19. Yet, in *Ocean State Tactical* this Court stated: "[T]he Supreme Court opined that handguns cannot be banned in part because they are 'the quintessential self-defense weapon.'" *Id.* 95 F.4th at 48 (*quoting Heller*, 554 U.S. at 629). The Commonwealth makes a vague gesture toward certain "features" of the banned handguns to try to justify its ban, but it does not explain what it is about those "features" that allows it to ignore *Heller* and *Ocean State Tactical*.

---

[1] Plaintiffs recognize that the Court disagrees with Justice Alito. *Ocean State*, 95 F.4th at 51. They cite his concurrence to preserve the matter.

The Commonwealth says it has banned only a "subset" of handguns, but it does not cite any authority for the proposition that a "subset" of handguns may be banned despite *Heller's* and *Ocean State Tactical's* plain holdings. Plaintiffs are unaware of any such authority. Plaintiffs are, however, aware of authority to the contrary. In *Duncan v. Bonta*, 2023 WL 6180472, at *8 (S.D. Cal. Sept. 22, 2023) (stayed), the court rejected the notion that *Heller* distinguished between various types of handguns. It wrote: "The Supreme Court has not described protected arms in subdivided categories." *Id.* at *8. For example, "[w]hen *Heller* found handguns were protected, it did not distinguish between semiautomatic pistols and revolvers." *Id.*

In summary, by failing to defend its handgun ban in any meaningful way, the Commonwealth has all but conceded that it is unconstitutional.

## IV.  "Common Use" is a Statistical Inquiry

Much of Plaintiffs' argument is based on the evidence developed in the district court that tens of millions of the banned rifles and over 150 million of the banned magazines are owned by law-abiding citizens. As such, they are in common use for lawful purposes and under *Heller* may

not be categorically banned. The Commonwealth points to *Ocean State Tactical's* rejection of this argument. Ans. Br. 15. For purposes of preserving their argument, Plaintiffs incorporate their arguments to the contrary. Op. Br. 18, 36. *See also New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255-56 (2d Cir. 2015) ("common use" issue is an "objective and largely statistical inquiry" and the banned rifles and magazines are in common use).

## V.    This is Not a "Nuanced" Case

The Commonwealth points out that *Ocean State Tactical* rejected the argument that cases like this one require a "straightforward" analogical inquiry and that this Court held that because of advances in technology a "nuanced" approach is appropriate. Ans. Br. 17. For purposes of preserving their argument, Plaintiffs incorporate their arguments to the contrary. Op. Br. 28-32, 38.

## VI.   There is No Historical Tradition of Categorically Banning Firearms in Common Use

The Commonwealth conflates regulating the public *use* of various weapons, such as knives and clubs, with banning their *possession* altogether, including for self-defense in the home. Ans. Br. 20. Plaintiffs incorporate their arguments to the contrary. Op. Br. 39-47.

## VII.  Gunpowder Storage Laws Were Fire Safety Regulations

The Commonwealth cites a handful of gunpowder storage regulations in support of its arms ban. Ans. Br. 22. The "why" of these laws is obviously not analogous to an arms ban, as *Heller* itself pointed out when it rejected as an analogue the very Massachusetts law quoted by the Commonwealth. 554 U.S. at 631-32. These laws did not regulate gunpowder as a weapon; rather they were fire safety regulations. *Id.*

## VIII. The Knife, Club and Trap Gun Regulations were Not Analogous to the Commonwealth's Categorical Ban of Weapons in Common Use

Next, the Commonwealth points to laws regulating the use of "trap guns," Bowie knives, and clubs. Ans. Br. 23-26. The Commonwealth notes that this Court accepted these laws as analogous in *Ocean State Tactical.* For the purpose of preserving their arguments, Plaintiffs incorporate their arguments to the contrary. Op. Br. 39-47.

## IX.  Twentieth-Century Laws Are Not Relevant

The Commonwealth argues that certain twentieth-century laws are relevant analogues and points out that in *Ocean State Tactical* this Court held the same. Ans. Br. 27-28. For the purpose of preserving their

arguments, Plaintiffs incorporate their arguments to the contrary. Op. Br. 49-50.

## X. "Common Use" Does Not Mean "Frequently Fired"

In *Ocean State Tactical*, this Court held that "to gauge how [a statute] might burden the right of armed self-defense, we consider the extent to which [the banned weapon is] actually used by civilians in self-defense." 95 F.4th at 45. The arguments to the contrary in this section are asserted for the purpose of preserving them.

The requirement that Plaintiffs engage in an empirical inquiry into how many times the banned arms are used in self-defense situations contradicts *Heller*. This is an "overly cramped" reading of the Supreme Court's Second Amendment precedents. *Duncan v. Bonta*, 83 F.4th 803, 815 (9th Cir. 2023) (Bumatay, J., dissenting). "Rather than going down this statistical rabbit hole, the Supreme Court looked to Americans' overall *choice* to use a firearm for self-defense." *Id*. (emphasis in the original). In *Heller,* the Court didn't dissect statistics on self-defense situations or look at anecdotes of a handgun's use in self-defense. *Id*. Instead, "[i]t is enough to note," the Court observed, "that the American people have considered the handgun to be the quintessential self-defense weapon."

*Heller*, 554 U.S. at 629. It was sufficient that the banned arm was "overwhelmingly chosen by American society for th[e] lawful purpose" of self-defense. *Id*. at 628. And "banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family [fails] constitutional muster." *Id*. at 628-29 (cleaned up). Nothing in *Heller* requires Plaintiffs to demonstrate the number of times that commonly possessed firearms have been actually fired in self-defense situations. Certainly, there was no such evidence introduced in *Heller*.

## XI. The Commonwealth Does Not Dispute that the Banned Weapons are Rarely Used in Crime

Plaintiffs demonstrated that the banned rifles are rarely used in crime. Op. Br. 17-19. The Commonwealth does not attempt to dispute these arguments. This is unsurprising because the arguments are based on evidence provided by its own expert. *Id*. Nevertheless, the Commonwealth continues to insist that it is constitutional to ban the 99.998% of the rifles that were not used in homicides, because the remaining handful were. This argument makes no sense. In *Cuomo*, the Second Circuit wrote:

> Though handguns comprise only about one-third of the nation's firearms, by some estimates they account for 71 percent to 83 percent of the firearms used in murders and 84 percent to 90 percent

of the firearms used in other violent crimes. That evidence of dis-
proportionate criminal use did not prevent the Supreme Court
from holding that handguns merited constitutional protection.

804 F.3d at 256.

Handguns are protected even though they are the overwhelming
choice of criminals. Therefore, it would be backwards to hold that com-
monly possessed rifles are unprotected because they have been used by
criminals in a handful of cases. See *Heller v. D.C.*, 670 F.3d 1244, 1286
(D.C. Cir. 2011) (Kavanaugh, J., dissenting). See also Op. Br. 34-36.

## XII. There Were No Founding-Era Bans on Possession in the Home for Purposes of Self-Defense

*Heller's* principle holding is that it is unconstitutional to ban a
weapon in common use, and that bans on possession in the home for the
purpose of self-defense are especially problematic. 554 U.S. at 628-29.
Under *Bruen*, a modern regulation must be analogous to a Founding-era
regulation regarding "how" it burdens the right to keep and bear arms.
597 U.S. at 29. A law regulating the *use* of a weapon in public is obviously
not a burden comparable to a total ban on *possession* of the weapon even
for self-defense inside the home.

The Commonwealth writes: "Plaintiffs are wrong that there were
no bans on sale or possession in the Founding era. When eighteenth-

century legislators did perceive a widespread public safety threat, they regulated through prohibitions, as with gunpowder and trap guns." Ans. Br. 42. This argument is simply wrong. The Commonwealth pointed to no ban on the possession of gunpowder. And prohibitions on trap guns are not bans on possession of guns as such. They are obviously prohibitions on the *use* of a gun in a trap. In other words, it was lawful to possess any given gun, but the law prohibited using the gun in a trap. Remove the gun from the trap and its possession was perfectly lawful. As for the Bowie knife regulations relied upon so heavily by the Commonwealth, recently its expert (i.e., Dr. Spitzer) admitted that none of the regulations barred mere possession of the knives. See *NAGR v. Polis*, District of Colorado, 24-cv-001, ECF 23-1, 99-100.

## XIII. *Heller* Rejected Arguments Based on Differences in the Degree and Kind of Urban Firearms Violence

The Founders were obviously aware of urban firearm violence. *Bruen*, 597 U.S. at 27. But the Commonwealth argues that because the firearm violence at the Founding was different in degree and kind from modern gun violence, there is no longer any need to identify a Founding-era analogue to its arms ban. Ans. Br. 43. But *Bruen* destroys this argument. The Court wrote:

11

*Heller* itself exemplifies this kind of straightforward historical inquiry. . . . The District in *Heller* addressed a perceived societal problem – firearm violence in densely populated communities – and it employed a regulation – a flat ban on the possession of handguns in the home – that the Founders themselves could have adopted to confront that problem. Accordingly, after considering "founding-era historical precedent," including "various restrictive laws in the colonial period," and finding that none was analogous to the District's ban, *Heller* concluded that the handgun ban was unconstitutional.

597 U.S. at 27.

The problem perceived by the District in *Heller* was firearm violence in urban areas. But *Bruen* wrote that the Founders were aware of that same problem and could have adopted the same kind of firearms ban to confront it – but they didn't. *Bruen* obviously did not mean that the Founders were aware of firearm violence of the same degree and kind as that experienced today. It follows that the Commonwealth is wrong when it argues that the Founders' ignorance of the degree and kind of violence today puts its firearms ban in a different category than the one at issue in *Heller*. No, the perceived societal problem at issue in *Heller* is the same problem Massachusetts seeks to address with its firearms ban. But just as in *Heller*, the Founders could have enacted a firearms ban to confront that problem, but they did not, and that means

the Commonwealth's ban is unconstitutional for the same reason the District's ordinance was unconstitutional.

## XIV. *Heller* Cannot be Cabined to its Facts

The Commonwealth insists that handguns are the only protected category of arms. Ans. Br. 45. In other words, the Commonwealth argues that *Heller* should be cabined to its facts. Op. Br. 19. The AR-15 and similar rifles are the best-selling rifles in the history of the Nation. They are owned by millions of Americans and have accounted for approximately 20% of all firearm sales in the country for over a decade. But that means nothing according to the Commonwealth, because only handguns are protected. Surely this is not the law, because a line "drawn out of a bare desire to restrict *Heller* as much as possible or to limit it to its facts . . . is not a sensible or principled constitutional line for a lower court to draw or a fair reading of [*Heller*]." *Heller v. D.C.*, 670 F.3d 1244, 1286 n. 14 (D.C. Cir. 2011), 1286 (Kavanaugh, J., dissenting).

## XV. The Banned Weapons are "Arms"

The banned firearms and so-called large capacity magazines are "arms" within the plain text of the Second Amendment for the reasons set forth in the Opening Brief. Op. Br. 15-17, 32. As its name implies, the

"plain text" step focuses on the text. In other words, it is a textual inquiry, and that is how *Bruen* dealt with the issue in its brief textual analysis. *Id.* 597 U.S. at 32-33.

Against all common sense, the Commonwealth insists that the textual analysis is really an empirical analysis because, according to the Commonwealth, Plaintiffs have the burden of producing empirical studies of how frequently the banned weapons are used in self-defense scenarios at the plain text step. Ans. Br. 50-51. Judge Brennan explained why this is wrong in *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175 (7th Cir. 2023), where he wrote:

> The government parties limit the Second Amendment right by importing the phrase "in common use" to assess whether firearms are "Arms." But their reading improperly restricts the constitutional right. The banned firearms propel bullets by explosive force from gunpowder, yet the government parties ask us to conclude that these rifles and pistols are not "Arms." As one amicus curiae submitted, "in common use" is a sufficient condition for finding arms protected under the history and tradition test in *Bruen*, not a necessary condition to find them "Arms." *The nature of an object does not change based on its popularity, but the regulation of that object can.*

*Id.* at 1209 (Brennan, J., dissenting) (emphasis added).

## XVI. The Commonwealth May Not Justify its Ban by Pointing to Weapons it Has Not Banned

The Commonwealth argues that the Court may affirm because its arms ban constitutes only a "negligible burden" on the right to keep and bear arms. Ans. Br. 52. This is so, according to the Commonwealth, because weapons it has not banned are available and those weapons are more suitable for self-defense than the banned weapons. This argument betrays a fundamental misunderstanding of *Bruen* and *Heller*. Courts do not have the power to assess the "costs and benefits of firearms restrictions." *Bruen*, 597 U.S. at 23 (citation and quotation marks omitted). Courts also have no "power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id.* (quoting *Heller*, 554 U.S. at 634). Moreover, the fact that Massachusetts has banned these weapons while leaving others unrestricted is simply irrelevant to the constitutional analysis. It is "no answer" to say that it is permissible to ban the possession of a weapon in common use so long as the possession of other weapons is allowed. *Heller*, 554 U.S. at 629.

## XVII. The Other Factors Weigh in Favor of Injunctive Relief

The other preliminary injunction factors weigh in favor of injunctive relief for the reasons set forth in the Opening Brief. Op. Br. 55-56.

## CONCLUSION

The Court should reverse the district court's denial of Plaintiff's motion for preliminary injunction and remand this matter for further proceedings.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington
Arrington Law Firm
4195 Wadsworth Boulevard
Wheat Ridge, Colorado 80033
(303) 205-7870
barry@arringtonpc.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Local Rule 32.1 because it contains 3,165 words, excluding the parts of the brief exempted by Fed. R. App. P. 32, as determined by the word-counting feature of Microsoft Word.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32 and the typestyle requirements of Fed. R. App. P. 32 because it has been prepared in the proportionally spaced typeface Century Schoolbook using Microsoft Word in 14-point font.

*/s/ Barry K. Arrington*
_____
Barry K. Arrington

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2024, an electronic copy of the fore-going Brief of The Plaintiffs-Appellants was filed with the Clerk of the Court using the ECF system and thereby served upon all counsel appearing in this case.

*/s/ Barry K. Arrington*

_____

Barry K. Arrington